UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SEAN MONROE (#294086)

VERSUS                                              CIVIL ACTION

N. BURL CAIN, ET AL                                 NUMBER 12-798-BAJ-SCR

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, April 9, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SEAN MONROE (#294086)

VERSUS                                             CIVIL ACTION

N. BURL CAIN, ET AL                                NUMBER 12-798-BAJ-SCR

**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Plaintiff's Motion For Cross-Summary Judgment and the Motion For Summary Judgment filed by defendant Dr. Jonathan Roundtree. Record document numbers 33 and 31, respectively.

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Jonathan Roundtree.[1] Plaintiff alleged that the defendant was deliberately indifferent to his serious medical needs in violation of his constitutional rights. Plaintiff sought compensatory damages and declaratory and injunctive relief.

Plaintiff moved for summary judgment relying on his medical

---

[1] Plaintiff's claims against Warden N. Burl Cain and Asst. Warden Kenneth Norris were previously dismissed. Record document number 22. The court also declined to exercise supplemental jurisdiction over any state law claim. *Id*.

records, a copy of which were previously filed in the record.[2]

Defendant moved for summary judgment relying on a statement of undisputed facts, his affidavit, the plaintiff's responses to interrogatories and requests for admission, copies of the plaintiff's medical records and the results of Administrative Remedy Procedure ("ARP") LSP-2012-484.

### I. Factual Allegations

Plaintiff alleged that on May 10, 2010, he was weak, experienced flu-like symptoms and severe abdominal pain and had a low-grade temperature.  Plaintiff alleged that a few days later he was examined by Dr. Roundtree who diagnosed gall bladder disease. Plaintiff alleged that Dr. Roundtree did not order any tests to rule out appendicitis.

Plaintiff alleged that 10 days later he presented with similar complaints and was placed on Ward One for treatment.  Plaintiff alleged that on June 1, 2010, he was examined by Dr. Williams and then was transferred to Earl K. Long Hospital ("EKL").

Plaintiff alleged that test results showed he had two cysts on his liver which were infected.  Plaintiff alleged that he was hospitalized for 28 days.  Plaintiff alleged that during his hospitalization, the infection spread to his lungs and required additional medical treatment.

---

[2] Record document number 25.

Plaintiff alleged that after he was released from the hospital he was once again placed on the prison medical ward, where he received antibiotics and pain medication for more than a month. Plaintiff alleged that he was returned to the general prison population and was issued a no-duty medical duty status for four months. Plaintiff alleged that several weeks later he was examined by an EKL physician who informed him that he had been scheduled to undergo surgery on his appendix which was the source of the infection.

Plaintiff alleged that his medical duty status lapsed and he was assigned to perform work in the agricultural fields. Plaintiff alleged that he continued to experience severe abdominal pain and was returned to EKL for a CT scan.

Plaintiff alleged that in October 2011, his pain intensified and he was seen at sick call several times. Plaintiff alleged that in November, he was seen by an EKL physician who recommended that the plaintiff be issued a medical duty status which restricted the plaintiff from performing work in the agricultural fields. Plaintiff alleged that the medical duty status was issued by an LSP physician in accordance with the EKL physician's recommendations.

Plaintiff alleged that in December 2011, he was examined by an EKL physician who ordered another CT scan of his appendix. Plaintiff alleged that on January 17, 2012, he was transported to EKL to undergo the previously ordered CT scan. Plaintiff alleged

that the CT scan showed that his appendix was severely inflamed and required immediate surgery. Plaintiff alleged that on January 20, 2012, he was rushed back to EKL to undergo emergency surgery on his appendix.

Plaintiff alleged that after the surgery, EKL Dr. Ashish Nath told him that Dr. Roundtree had canceled the two previously scheduled surgeries. Plaintiff further alleged that on June 16, 2012, EKL Dr. Julia Wilkinson told him that EKL would not have canceled his surgeries because he was diagnosed with chronic appendicitis. Plaintiff alleged that Dr. Wilkinson told him that at worst the surgery might have been rescheduled, but would have never been canceled.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "[A] party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). The burden then shifts to "the nonmoving party to go beyond the

pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is genuine issue for trial.'" *Id*. at 324; *see* Fed.R.Civ.P. 56(c)(1). "If a party fails to properly support an assertion of fact ... as required by Rule 56(c), the court may [ ] ... grant summary judgment if the motion and support materials - including the facts considered undisputed - show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(3). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

### B. Deliberate Indifference

Plaintiff alleged that Dr. Roundtree was deliberately indifferent to his serious medical needs. Specifically, the plaintiff alleged that between May 2010 and January 2012, Dr. Roundtree provided inadequate medical care, delayed necessary medical treatment and canceled two previously scheduled appendectomy surgeries.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285

5

(1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, supra; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not give rise to a Section 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

Plaintiff's medical records showed that on May 7, 2010, the plaintiff sought emergency medical treatment for a stomach ache.[3] Plaintiff was examined by a physician for complaints of nausea and vomiting.[4] Plaintiff was prescribed Kaopectate® and Tylenol®.[5] Plaintiff's medical records showed that he declared himself an emergency later that day complaining that he had additional episodes of vomiting.[6] Plaintiff was examined by a physician and was prescribed Reglan® and Levsin® and was issued a no duty-bed rest medical duty status.[7]

Plaintiff's medical records showed that the plaintiff was examined by medical personnel on May 9 and May 25, 2010, for

---

[3] Record document number 31-7, p. 240.

[4] *Id*. at 243.

[5] *Id*.

[6] *Id*. at 242.

[7] *Id*.

6

complaints of continued abdominal pain.[8]

Plaintiff's medical records showed that on May 26, 2010, the plaintiff was examined by a physician for complaints of stomach pain.[9] Lab studies and x-rays were ordered.[10]

Plaintiff's medical records showed that on June 2, 2010, he was examined for complaints of flu-like symptoms and upper quadrant pain.[11] Plaintiff was administered medication.[12] On June 3, 2010, the plaintiff continued to experience right upper quadrant pain, fever and soreness after eating and was admitted to the R.E. Barrow, Jr. Treatment Center where he was administered intravenous antibiotics and hydration.[13]

On June 4, 2010, the plaintiff was admitted to EKL where a CT scan of the plaintiff's abdomen and pelvis, paracentesis (the removal of fluid from the abdomen), a liver biopsy, and excision of liver abscesses were performed.[14] Plaintiff was discharged and returned to the R.E. Barrow, Jr. Treatment Center where he remained

---

[8] *Id.* at 239, 235.

[9] *Id.* at 227.

[10] *Id.*

[11] *Id.* at 226.

[12] *Id.*; record document number 31-4, affidavit of Dr. Jonathan Roundtree (hereafter, Dr. Roundtree affidavit), p. 2, ¶ 7.

[13] Record document number 31-7, pp. 290, 292, 300-303, 312; Dr. Roundtree affidavit, p. 3, ¶ 8.

[14] Record document number 32, pp. 39-50.

until he was discharged on July 30, 2010.[15]

Plaintiff's medical records showed that on July 1, 2010, the plaintiff was examined at the EKL Surgery Clinic.[16] Plaintiff was assessed for liver abscess and pleural effusion.[17] Plaintiff was considered to be doing well and a notation was made that the plaintiff would need an internal appendectomy once the abscess resolved.[18] A CT Scan of the abdomen and pelvis was ordered[19] and completed on August 10, 2010.[20]

Plaintiff's medical records showed that on August 12, 2010, the plaintiff was examined at the EKL Surgery Clinic for hepatic abscess and percutaneous drainage of abscess.[21] A culture was ordered and a follow-up appointment was to be scheduled.[22]

Plaintiff's medical records showed that on August 26, 2010, the plaintiff was examined at the EKL Surgery Clinic by Dr. Ryan

---

[15] Record document number 31-7, p. 214; record document number 33-1, p. 11, plaintiff's Memorandum in Support of Motion for Summary Judgment.

[16] Record document number 31-7, p. 209.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 195.

[21] *Id.* at 199.

[22] *Id.*

Jacob.[23] Plaintiff was found to have liver abscess and pleural effusion.[24] Dr. Jacob noted that the appendicitis had resolved.[25] EKL medical records indicate that ELK physician's orders were completed and the plaintiff executed a consent to undergo surgery to remove his appendix.[26] However, the medical records do not indicate that surgery was actually scheduled.

Plaintiff's medical records showed that on September 17, 2010, the plaintiff was examined at the Physician's Clinic by Dr. Lavesphere.[27] The treating physician noted that the plaintiff was exercising, putting on weight and was doing well and reported that he felt great.[28] The treating physician noted that the liver cyst drainage was doing well and the pleural effusion had resolved.[29]

Plaintiff's medical records showed that on October 4, 2010, the plaintiff had a follow-up examination in the Physician's Clinic.[30] Plaintiff's incisions were healed and the plaintiff was

---

[23] *Id.* at 191.

[24] *Id.*

[25] *Id.*

[26] Record document number 32, pp. 8, 14 and 17.

[27] Record document number 31-7, p. 190.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 189.

9

instructed to keep his next appointment.[31]

Plaintiff's medical records showed that on December 23, 2010, he was examined at the ELK Surgery Clinic.[32] The physician noted that it was planned that the patient would have an internal appendectomy once his symptoms resolved.[33] Physical examination showed that the plaintiff had no acute symptoms; there was no shortness of breath, no chest pain and the abdomen was slightly tender to palpation in the right lower quadrant with no rebound.[34] CT scans of the chest and abdomen were ordered.[35]

Plaintiff's medical records showed that the CT scan of the abdomen and pelvis,[36] and a CT scan of the chest,[37] were completed on January 20, 2011. The CT scan of the abdomen and pelvis showed the hepatic parenchyma was without definite focal drainable fluid collections.[38] The impression was that there were areas of mild irregularity in the anterior and lateral right hepatic lobe in the area of prior abscesses but that there were currently no focal

---

[31] *Id.*

[32] *Id.* at 187.

[33] *Id.*

[34] Record document number 31-4, Dr. Roundtree affidavit, ¶ 18.

[35] Record document number 31-7, p. 187.

[36] *Id.* at 178-179.

[37] Record document number 32, pp. 56-57.

[38] *Id.* at 178-179.

drainable fluid collection seen within the liver.[39] In addition, mild enhancement of the wall of the appendix was noted and early appendicitis could not be completely excluded.[40] The CT scan of the chest showed that the large right effusion that was present on the comparison study dated June 13, 2010, was markedly improved in the interim.[41] The impression was that there was near complete resolution of the pleural effusion on the right and re-expansion of the right lobes.[42] In addition, there was either a small amount of pleural fluid or pleural thickening with minimal bands of scarring or atelectasis within the inferior lung on the right.[43] The left lung was clear, the thyroid gland was normal, and there were no vascular abnormalities detected.[44]

Plaintiff's medical records showed that on February 24, 2011, the plaintiff was examined at the EKL Surgery Clinic.[45] Physical examination showed that the plaintiff's abdomen was soft, non-

---

[39] *Id.*

[40] *Id.*

[41] Record document number 32, pp. 54-55.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] Record document number 31-7, p. 174.

11

tender, and non-distended.[46] Bowel sounds were present and the right lower quadrant was non-tender.[47] A surgery package was sent to EKL.[48] Plaintiff's EKL medical records show that Physician's Orders were issued scheduling the plaintiff for appendectomy surgery on April 8, 2011.[49] Plaintiff executed a consent form on February 24, 2011.[50]

Plaintiff's medical records showed that on April 5, 2011, the LSU Health Sciences Center sent a notice canceling the procedure scheduled for April 6, 2011 and instructing that the patient should not be sent.[51] A notation on the April 5, 2011 R.E. Barrow Treatment Center NPO/Prep Order stated "Procedure Canceled per Dr.

---

[46] *Id.*; record document number 31-4, Dr. Roundtree affidavit, ¶ 20.

[47] *Id.*

[48] *Id.*

[49] Record document number 32, p. 20.

[50] *Id.* at 24-26.

[51] Record document number 31-7, p. 171. This April 6 date conflicts with the April 8 surgery date on some EKL medical records, including the February 24, 2011 Physician's Orders. Record document number 25, p. 26. No information in the plaintiff's prison medical records or the EKL medical records explains the discrepancy. The discrepancy is not material to the decision on the parties' summary judgment motions. Nonetheless, it is likely that the discrepancy in the surgery date resulted in some kind of confusion at EKL, e.g., the failure to schedule an operating room or necessary operating room personnel, which caused EKL to cancel the April surgery. However, no finding on the cause for canceling the plaintiff's April surgery is necessary nor should one be inferred from this Magistrate Judge's Report.

12

Roundtree," indicating the procedure to be conducted at EKL on April 6, 2011 was canceled.[52] Dr. Roundtree explained that after EKL canceled the surgery he canceled the order to prepare the plaintiff for the surgery.[53] A notation was made by prison officials on the Trip Return form that the procedure had been "Canceled by EKL" and "no new [surgery] date [had been] given."[54]

Plaintiff's medical records showed that on August 11, 2011, he was examined at the EKL Surgery Clinic.[55] Plaintiff currently had no complaints.[56] The assessment was that the plaintiff had complicated appendicitis and the plan was an internal appendectomy and that a packet be sent to EKL.[57]

Plaintiff's EKL medical records showed that on August 17, 2011, EKL Physician's Orders were issued scheduling the plaintiff for a internal appendectomy on September 8, 2011.[58] Plaintiff executed a consent on August 11, 2011.[59] Plaintiff's medical records contain no entry regarding the cancellation of the

---

[52] *Id*. at 172.

[53] Record document number 31-4, Dr. Roundtree affidavit, ¶ 20.

[54] *Id*. at 170.

[55] *Id*. at 158.

[56] *Id*.

[57] *Id*.

[58] Record document number 32, p. 15.

[59] *Id*. at 18-19.

13

appendectomy on September 8, 2011.

Plaintiff's medical records showed that on October 3, 2011, the plaintiff sought sick call for complaints of a painful knot on the right side of his chest.[60]  Plaintiff was given a prescription for pain medication.[61]

Plaintiff's medical records showed that on October 18, 2011, the plaintiff sought sick call for complaints of frequent urination for five months and abdominal pain.[62]  The matter was referred to a physician.[63]  Plaintiff's medical records showed that on October 30, 2011, the plaintiff sought sick call complaining of lower abdominal pain.[64]  Plaintiff's temperature was 98.7°, there was no tenderness to palpation, the plaintiff ambulated without distress and he denied any problems urinating.[65]  Plaintiff was instructed to keep his upcoming appointment.[66]

Plaintiff's medical records showed that on November 8, 2011, the plaintiff sought sick call complaining of continued lower

---

[60] Record document number 31-7, p. 156.

[61] *Id.*

[62] *Id.* at 155.

[63] *Id.*

[64] *Id.* at 154.

[65] *Id.*

[66] *Id.*

abdominal pain which was getting worse.[67] On November 12, 2011, the plaintiff was examined at the EKL Surgery Clinic.[68] Dr. Nath assessed the plaintiff with complicated appendicitis and planned to issue the plaintiff a medical duty status until surgery.[69] Dr. Nath noted that surgery had been canceled twice.[70] The medical duty status was ordered on November 14, 2011.[71]

Plaintiff's medical records showed that on November 29, 2011, the plaintiff sought sick call complaining that he had not received the medical duty status recommended by the surgeon on November 12, 2011 and that his lower abdomen is always painful.[72] Plaintiff's medical assessment showed that the plaintiff's abdomen was soft and non-tender with no guarding or distension.[73] Plaintiff's medical records showed that a Medical Duty Status Report was issued on November 23, 2011 restricting the plaintiff's activities in accordance with the directives of his treating EKL surgeon.[74]

Plaintiff's medical records showed that the plaintiff was

---

[67] *Id.* at 153.

[68] *Id.* at 152.

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.* at 150.

[73] *Id.*

[74] *Id.* at 48.

examined at the EKL Surgery Clinic on December 3, 2011.[75] Physical examination revealed that the plaintiff's abdomen was soft and not distended and he was tender to palpation in his lower right quadrant.[76] There were no peritoneal signs, no guarding and no palpable mass.[77] The physician noted that the only symptom is pain.[78] A CT scan was ordered and the plaintiff was to return in six months.[79]

Plaintiff's medical records showed that on January 17, 2012, the plaintiff was transported to EKL for a CT scan.[80] The CT scan showed that in the right lower quadrant there was a visualization of what appears to be a very prominent appendix which has a thickened wall.[81] There was a blurring of the adjacent fat planes and a small amount of fluid in the area.[82] The overall appearance strongly suggested appendicitis.[83] Later that same day after returning to the prison, the plaintiff declared himself a medical

---

[75] *Id*. at 149.

[76] *Id*.

[77] *Id*.

[78] *Id*.

[79] *Id*.

[80] Record document number 32, pp. 36-37.

[81] *Id*.

[82] *Id*.

[83] *Id*.

emergency with complaints of abdominal pain.[84] A physician reviewed the chart and a scheduled appointment was noted.[85]

Plaintiff's medical records showed that on January 19, 2012, the plaintiff was examined at the Physician's Clinic for complaints of dizziness for two weeks.[86] Plaintiff was prescribed medication.[87]

Plaintiff's medical records showed that on January 20, 2012, Dr. Paul Joce spoke to Dr. Richard at EKL and obtained his approval to transfer the plaintiff to the ER for surgical evaluation and management.[88] On that date, the plaintiff underwent a laparoscopic appendectomy and was discharged back to LSP on January 22, 2012.[89]

## Conclusion

All of the more than 600 of pages of the plaintiff's prison and EKL medical records have been carefully reviewed. There is no medical record, or other summary judgment evidence, which supports the plaintiff's allegation that Dr. Roundtree canceled either of the plaintiff's two surgeries. There is no summary judgment evidence sufficient to create a genuine dispute for trial as to the

---

[84] Record document number 31-7, p. 147.

[85] *Id.*

[86] *Id.* at 160.

[87] *Id.*

[88] *Id.* at 161.

[89] *Id.* at 164-166.

plaintiff's claim that Dr. Roundtree purposely delayed any necessary medical treatment or was otherwise deliberately indifferent to the plaintiff's serious medical needs.

### RECOMMENDATION

It is the recommendation of the magistrate judge that the Plaintiff's Motion For Cross-Summary Judgment be denied, the Motion For Summary Judgment filed by defendant Dr. Jonathan Roundtree be granted, and this action be dismissed.

Baton Rouge, Louisiana, April 9, 2014.

*[signature: Stephen C. Riedlinger]*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE